IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MELISSA J. WIANT,)
)
    Plaintiff, )
)
  -vs- ) Civil Action No. 15-90
)
CAROLYN W. COLVIN, )
COMMISSIONER OF SOCIAL SECURITY, )
)
    Defendant. )

AMBROSE, Senior District Judge.

## OPINION
## and
## ORDER OF COURT

### SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. (ECF Nos. 13 and 17). Both parties have filed Briefs in Support of their Motions. (ECF Nos. 14, 18 and 23). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am granting Plaintiff's Motion for Summary Judgment (ECF No. 13) and denying Defendant's Motion for Summary Judgment. (ECF No. 17).

### I. BACKGROUND

Plaintiff brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security income ("SSI") and disability insurance benefits ("DIB") pursuant to the Social Security Act ("Act"). Plaintiff filed her applications for benefits alleging she has been disabled since May 20, 2009, but later amended the alleged onset date to March 17, 2010. (ECF No. 7-7, pp. 2, 5; ECF No. 7-2, p. 43). Administrative Law Judge ("ALJ") Michelle Wolfe held a hearing on October 29, 2013. (ECF No. 7-2, pp. 40-60). On November 22, 2013, the ALJ issued a decision finding Plaintiff is not

disabled. (ECF No. 7-2, pp. 19-34). After exhausting all administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. (ECF Nos. 13, 17). The issues are now ripe for review.

## II. **LEGAL ANALYSIS**

### A. **Standard of Review**

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when

evaluating the disabled status of each claimant. 20 C.F.R. §404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). *Dobrowolsky*, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). *Id.*

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. *Podedworny v. Harris,* 745 F.2d 210, 221 (3d Cir. 1984).

### B. Treating Physicians in Fibromyalgia Cases

Plaintiff was diagnosed with fibromyalgia and this condition was found to be a severe impairment by the ALJ. (ECF No. 7-2, p. 21). Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p. Despite this finding, the ALJ rejected the opinions of two of Plaintiff's treating physicians: Dr. Benkovic, Plaintiff's treating internist and Dr. Salim, Plaintiff's treating psychiatrist. (ECF No. 7-2, pp. 25-32). To that end, Plaintiff's argues that the ALJ erred in giving no weight or very little weight to the opinions of Dr. Benkovic and Salim. (ECF No. 14, pp. 6-17).

3

The amount of weight accorded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a non-examining source. 20 C.F.R. § 416.927(c)(1). In addition, the ALJ generally will give more weight to opinions from a treating physician, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 416.927(c)(2). If the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," he must give that opinion controlling weight. *Id.* Also, "the more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." *Id.* § 416.927(c)(4).

In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. *Id.* Similarly, under 20 C.F.R. § 416.927(d)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

*Becker v. Comm'r of Social Sec. Admin.*, No. 10-2517, 2010 WL 5078238, at *5 (3d Cir. Dec. 14, 2010). Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." *Diaz v. Comm'r of Soc. Security*, 577 F.3d 500, 505 (3d Cir. 2009).

4

There is no question that fibromyalgia, an elusive problem, poses special circumstances in the social security arena. In evaluating fibromyalgia, courts acknowledge that symptoms of the disease are entirely subjective and medical testing may not be able to assess its severity. *Singleton v. Astrue*, 542 F. Supp. 2d 367, 377 (D. Del. 2008) (citing *Wilson v. Apfel*, 1999 WL 993723, *1, n.1 (E.D. Pa. 1999)). As such, the reports prepared by doctors treating a claimant with fibromyalgia are particularly significant and, of course, subject to the "Treating Physician Doctrine," as set forth above, which prescribes that great weight should be given to the opinion of a physician who has had the opportunity to continually observe the patient over a prolonged period of time. *Lintz v. Astrue*, Civ. Action No. 08-424, 2009 WL 1310646, at *7 (W.D. Pa. 2009) (internal citations omitted); *Perl v. Barnhart*, Civ. Action No. 03-4580, 2005 WL 579879, at *3 (E.D. Pa. Mar. 10, 2005); *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). Still, a claimant who has been diagnosed with fibromyalgia will not automatically be classified disabled under the Act. *Id.* "Even in fibromyalgia cases, the ALJ must compare the objective evidence and the subjective complaints and is permitted to reject plaintiff's subjective testimony so long as he provides a sufficient explanation for doing so." *Nocks v. Astrue*, 626 F. Supp. 2d 431, 446 (D. Del. 2009).

In this case, Plaintiff first suggests the ALJ erred in giving Dr. Benkovic's opinion no weight because she was focused mainly on her determination that there was no objective evidence of trigger or tender points. (ECF No. 14, pp. 8-10). A review of the record reveals that the ALJ was focused on evidence of trigger or tender points. (ECF No. 7-2, pp. 30-31). In assessing Plaintiff's fibromyalgia, the ALJ recognized that "[a] diagnosis of firbromyalgia is usually established under the American College of Rheumatology (ACR) guidelines based on a history of widespread pain and specific pain in at least 11 of the 18 tender point sites on digital palpitation." (ECF No. 7-2, p. 25). According to SSR 12-2p, however, this is not the only way to assess fibromyalgia cases. There are two ways to determine if a person has a medically determinable

5

impairment of fibromyalgia: 1) The 1990 American College of Rheumatology (ACR) Criteria, and 2) The 2010 ACR Preliminary Diagnostic Criteria. Both of these methods require a history of widespread pain and evidence that other disorders that could cause the symptoms or signs were excluded. SSR 12-2p. Under the 1990 ACR criteria, there should be at least 11 positive tender points on physical examination. *Id.* Tender points, however, are not required under the 2010 ACR Preliminary Diagnostic Criteria. *Id.* Rather, the 2010 ACR Preliminary Diagnostic Criteria requires "[r]epeated manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome." *Id.* The ALJ makes no mention of this type of assessment. Thus, I am unable to determine if the ALJ used the proper standards for assessing the impact of Plaintiff's severe impairment of fibromyalgia. Consequently, I find remand on this issue is required.

In any event, Plaintiff also suggests that the ALJ erred in giving Dr. Benkovic's opinion no weight on the basis that there were no treatment records showing tender/trigger points. After a review of the record, I agree with Plaintiff. Contrary to the ALJ's opinion, there were records from Dr. Benkovic that evidence tender points and sensory abnormalities. (ECF Nos. 7-12, p. 19-20; 7-27, pp. 25, 43; 7-21, p. 47; 7-23, pp. 5-6; 7-23, p. 13; 7-26, pp. 26, 39, 53). Consequently, this reason for rejecting Dr. Benkovic's opinion was not borne out in the record. Thus, remand is warranted on this basis as well.

Additionally, Plaintiff suggests that the ALJ erred in rejecting Dr. Benkovic's opinion on the basis that she felt it was completed by someone other than Dr. Benkovic. (ECF No. 14, p. 10). To that end, the ALJ specifically stated that "there is a question arising as to which part of the form he [Dr. Benkovic] completed and which part was completed by someone else." (ECF No. 7-2, p. 20). If the ALJ had questions as to which portions of the form was filled out by Dr. Benkovic, she could have contacted the doctor to provide such information. Since I am remanding on other

6

issues, I suggest the ALJ take this opportunity to contact Dr. Benkovic to clear up any questions she had regarding which portion of the form was completed by Dr. Benkovic.

Plaintiff also argues that the ALJ filed to mention and/or consider her small fiber neuropathy. (ECF No. 14, p. 11; No. 23, pp. 3-4). On remand, the ALJ is to consider the impact of Plaintiff's small fiber neuropathy on her residual functional capacity.

With regard to Dr. Salim, Plaintiff argues that the ALJ erred in giving "very little weight" to the opinion of Dr. Salim because the reasons given by the ALJ were incorrect. (ECF No. 14, pp. 14-17). Specifically, Plaintiff asserts that the ALJ erred in characterizing the July 7, 2010, mental status examination as "within normal limits." (ECF No. 14, pp. 15-16). After a review of the record, I agree with Plaintiff that it is a complete mischaracterization of the evidence to generally classify, without more, July 7, 2010, mental status examination as "within normal limits." The July 7, 2010, mental status examination by Dr. Salim notes that Plaintiff was hospitalized less than 4 months prior for being suicidal, that her mother passed away less than 2 months prior, that her current mood is depressed, with a sad affect, and that she had impaired concentration. (ECF No. 7-22, pp. 14-21). Plaintiff was diagnosed with dysthymic disorder, mood disorder, depression and grief reactions. *Id.* at p. 20. Additionally, Plaintiff was prescribed two types of medication for depression. *Id.* at p. 21. Based on the same, I find that the ALJ's characterization of the July 7, 2010 examination as "within normal limits" is not supported by the record. Furthermore, I find this is not a harmless error. The mischaracterization obviously infected the ALJ's analysis of the opinion of Dr. Salim when she gave his opinion that Plaintiff would miss three or more days and had fair to poor ability to perform both unskilled and skilled work very little weight. (ECF No. 7-2, pp. 29-30). The ALJ also used this mischaracterization to discredit the Global Assessment of Functioning ("GAF") scores Dr. Salim assigned to Plaintiff. (ECF No. 7-2, p. 31). Thus, remand is warranted.

Plaintiff also suggests that the ALJ's reliance on Dr. Salim's statement that Plaintiff is "psychiatrically stable" is misplaced. (ECF No. 14, p. 16). I agree. To be clear, the record of May 27, 2011, actually states that Plaintiff is "psychiatrically stable at present but has limitation due to her medical problems." (ECF No. 7-22, p. 10). Just because someone is "stable" does not necessarily mean that Plaintiff's work related abilities and limitations improved or are adequate. It very well could mean that in her stable state, Plaintiff still had serious limitations, especially given the detailed information contained in Dr. Salim's medical source statement and in his treatment records. Yet, the ALJ did not discuss, in any meaningful way, said treatment records. Thus, I find I am unable to make a meaningful review.

Consequently, remand with regard to the ALJ's analysis of Dr. Salim's opinion and treatment records is warranted.[1]

### C. Vocational Expert

Plaintiff submits that the ALJ erred by relying on an incomplete hypothetical question. (ECF No. 13, pp. 17-18). Since I am remanding as set forth above, the testimony of the vocational expert cannot stand. Consequently, remand on this issue is warranted.

An appropriate order shall follow.

---

[1] While Plaintiff does not raise this issue, since I am remanding this case, I find I am compelled to point out that on remand the ALJ should justify her determination to give the non-examining medical/psychological consultants "persuasive" weight. (ECF No. 7-2, p. 31). In support of her determination, the ALJ states that "their conclusions are consistent with the other substantial evidence of record." *Id.* This is inadequate boiler plate language. An ALJ must provide sufficient explanation of his or her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). In other words, the ALJ must provide sufficient discussion to allow the court to determine whether his opinion is based on substantial evidence. An ALJ's findings should be as "comprehensive and analytical as feasible," so that the reviewing court may properly exercise its duties under 42 U.S.C. §405(g). *Cotter,* 642 F.2d at 705. On remand, the ALJ should be more specific as to what evidence supports each conclusion.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MELISSA J. WIANT,)
)
       Plaintiff,)
)
  -vs-)    Civil Action No. 15-90
)
CAROLYN W. COLVIN,)
COMMISSIONER OF SOCIAL SECURITY,)
)
       Defendant.)

AMBROSE, Senior District Judge.

## **ORDER OF COURT**

THEREFORE, this 14th day of June, 2016, it is ordered that Plaintiff's Motion for Summary Judgment (Docket No. 13) is granted and Defendant's Motion for Summary Judgment (Docket No. 17) is denied.

It is further ordered that the decision of the Commissioner of Social Security is hereby vacated and the case is remanded for further administrative proceedings consistent with the foregoing opinion.

                BY THE COURT:

                s/ Donetta W. Ambrose
                Donetta W. Ambrose
                United States Senior District Judge